UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

ROBERT ROGALA, on behalf of himself and all others   :
similarly situated,   :
  :   Case No. 23 Civ. 111
                 Plaintiff,   :
   - against -   :
  :   CLASS AND COLLECTIVE
SCI FUNERAL SERVICES OF NEW YORK, INC.,   :   ACTION COMPLAINT
ALDERWOODS (NEW YORK), LLC, CHAS. PETER   :
NAGEL, LLC, I.J. MORRIS, LLC, NEW YORK FUNERAL   :
CHAPELS, LLC, and THOMAS M. QUINN & SONS, LLC,   :
  :
              Defendants.   :

-------------------------------------------------------------------------- X

Plaintiff Robert Rogala, on behalf of himself and all others similarly situated ("Plaintiff"), through his attorneys Kessler Matura P.C., complaining of SCI Funeral Services of New York, Inc., Alderwoods (New York), LLC, Chas. Peter Nagel, LLC, I.J. Morris, LLC, New York Funeral Chapels, LLC, and Thomas M. Quinn & Sons, LLC (collectively, "Defendants"), allege as follows:

## INTRODUCTION

1.    Plaintiff was employed by Alderwoods (New York), LLC, Chas. Peter Nagel, LLC, I.J. Morris, LLC, New York Funeral Chapels, LLC, and Thomas M. Quinn & Sons, LLC (collectively, the "Subsidiary Defendants") and SCI Funeral Services of New York, Inc. as a "Manual Worker" as defined by New York Labor Law ("NYLL") § 190(4), having worked for Defendants in New York as a funeral director and embalmer.

2.    SCI Funeral Services of New York, Inc., through the Subsidiary Defendants, owns and operates approximately 75 funeral homes in New York State, such as:

    a.   Vernon C. Wagner Funeral Homes, 125 W Old Country Road, Hicksville, NY 11801;

    b.   Claude R. Boyd–Spencer Funeral Home, 448 West Main Street, Babylon, NY 11702;

    c.  Claude R. Boyd - Caratozzolo Funeral Home, 1785 Deer Park Avenue, Deer Park, NY 11729;

    d.  D'Andrea Bros. Funeral Home, 99 Oak Street, Copiague, NY 11726;

    e.  Boulevard-Riverside Chapels, 1450 Broadway, Hewlett, NY 11557;

    f.  R. Stutzmann & Son, 224 39 Jamaica Avenue, Queens Village NY 11428;

    g.  James Funeral Home, 540 Broadway, Massapequa, NY 11758;

    h.  Parkside Memorial Chapels, 114-03 Queens Boulevard, Forest Hills, NY 11375;

    i.  Schwartz Brothers-Jeffer Memorial Chapels, 114-03 Queens Boulevard, Forest Hills, NY 11375;

    j.  Chas. Peter Nagel Funeral Directors, 352 East 87th Street, New York, NY 10128;

    k.  Thomas M. Quinn & Sons Funeral Home, 41-45 58th Street, Woodside, NY 11377;

    l.  Kennedy - Roth Funeral Home, 41-45 58th Street, Woodside, NY 11377;

    m.  Morisco Funeral Home, 41-45 58th Street, Woodside, NY 11377;

    n.  Stamatiades Funeral Home, 41-45 58th Street,  Woodside, NY 11377;

    o.  David Funeral Home, 41-45 58th Street, Woodside, NY 11377; and

    p.  O. B. Davis Funeral Homes, in Miller Place, Centereach, and Port Jefferson Station.

3.    Defendants paid Plaintiff and other Funeral Directors, Embalmers, and other similarly situated titles ("Embalmers") employed in New York on a biweekly basis.

4.    As a result, Defendants violated the requirement that manual workers be paid within seven days after the end of the workweek in accordance with NYLL § 191(1)(a), and the requirement that employees "be paid on the regular pay day" under the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201, *et seq*, (*see* 29 CFR § 778.106).

5.      Plaintiff brings the First and Second Causes of Action under the FLSA § 216(b) and NYLL § 198, respectively, for liquidated damages and interest, arising from Defendants violation of the FLSA and NYLL § 191.

6.      Because Plaintiff and his co-workers are similarly situated and the statute of limitations is continuing to run against them until they file a consent to join in this action, Plaintiff, seeks certification of this matter as a collective action and leave to notify the "FLSA Collective," defined as follows:

> All employees working in the State of New York for Defendants as Funeral Directors, Embalmers, and other similarly situated titles, at any time in the three years prior to the filing of this Complaint.

7.      Because the harm suffered by Plaintiff and their co-workers was widespread, Plaintiff brings this case as a class action and will seek certification under Federal Rule of Civil Procedure 23 ("Rule 23") for the following "Class":

> All current and former employees of Defendant working as Funeral Directors, Embalmers, and other similarly situated titles throughout the State of New York during the time period from six years prior to the filing of this Complaint until the date of judgment in this action.

## JURISDICTION & VENUE

8.      Jurisdiction of the Court over this controversy is based upon 29 U.S.C. § 201, *et seq.*, 28 U.S.C. § 1331 and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9.      This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

10.     This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## THE PARTIES

*Plaintiff Robert Rogala*

11.     Rogala is a resident of Nassau County, New York.

12.     Rogala worked for Defendants at Vernon C. Wagner Funeral Homes, 125 W Old Country Road, Hicksville, NY 11801 from about June 2017 through June 2018.

13.     Rogala worked for Defendants at Claude R. Boyd–Spencer Funeral Home, 448 West Main Street, Babylon, NY 11702 from about June 2019 through July 2021.

14.     Rogala worked for Defendants as an Embalmer.

15.     At all times relevant, Rogala was an "employee" as defined by 29 U.S.C. § 203(e)(1).

16.     At all times relevant, Rogala was an "employee" as defined by NYLL §§ 190(2), 651(5).

17.     Most of Rogala's time was spent performing physical labor.  That is, Rogala's duties included transporting deceased individuals to the funeral home from the mortuary, dressing and embalming the deceased, and cleaning the facility.  These tasks included a significant amount of lifting, squatting, pushing, pulling, scrubbing, mopping, and carrying.

18.     Defendants' job descriptions for Rogala's position list the following physical requirements:

   a.   Postures – Frequent continuous period of time sitting or standing up to 6 hours per day; frequently climbing stairs to access buildings;

4

  b. Physical Demands – Physical effort requiring manual dexterity is required, includes paperwork, calculators, computers and phone usage; and

  c. Ability to push and pull up to 150 pounds on flat and inclined flooring or ramps.

19. Defendants' job descriptions for Rogala's position list the following physical job duties:

  a. Cleans and embalms body;

  b. Uses scalpels, pumps, tubes, and equipment to replace bodily fluids/waste with embalming fluids;

  c. Performs restorations, styling hair, applying cosmetics, dressing body, and other preparation required for human remains;

  d. Dresses casket and lays deceased; and

  e. Maintains preparation room, cleans soiled equipment, properly disposes of hazardous waste, and promotes a safe work environment.

20. At all times relevant to the Complaint, Rogala was a "manual worker" within the meaning of NYLL § 190(4).

21. Rogala's primary duties as an Embalmer were non-clerical, non-managerial, and not related to sales.

22. As a result, Rogala was a "manual worker" as per NYLL § 190(4).

23. Rogala was entitled to payment of his wages withing seven calendar days after the end of the workweek, as per NYLL §191(1)(a).

24. Throughout his employment, however, Defendants paid Rogala every two weeks.

25.     For example, on April 1, 20201, Defendants paid Rogala for work performed from March 13, 2021 through March 26, 2021.  The first week of this payment cycle, ended on March 19, 2022.   He was paid 13 days after March 13, 2021.

26.     Rogala regularly worked outside of his scheduled hours.

27.     That is, Rogala's unpaid lunch break was regularly interrupted.  Rogala consistently had to answer the phone or oversee a casket delivery, for example, during this meal break.

28.     Rogala came in 15 minutes early each day and started worked upon his arrival.

29.     Rogala's hours were not recorded and paid until his regularly scheduled time.

30.     As a result, Rogala regularly was denied one or more hours of pay each week.

31.     Rogala was an hourly-paid employee.

32.     Rogala was a non-exempt employee.

33.     Defendants paid Rogala overtime for his recorded overtime hours, such as during the two-week pay cycle that ended on March 12, 2021.

34.     As a result, Rogala was not paid all overtime earned.

35.     Rogala has expressed his consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  *See* Ex. A.

**Defendant SCI Funeral Services of New York, Inc.**

36.     Upon information and belief, SCI Funeral Services of New York, Inc. was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

37.     Upon information and belief, SCI Funeral Services of New York, Inc.'s principal place of business is located at 1929 Allen Parkway Houston, TX 77019.

38.     Upon information and belief, SCI Funeral Services of New York, Inc. is in the funeral services business.

6

39.     At all times hereinafter mentioned, SCI Funeral Services of New York, Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(6).

40.     At all times hereinafter mentioned, the activities of SCI Funeral Services of New York, Inc. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

41.     Upon information and belief, SCI Funeral Services of New York, Inc. maintains control, oversight, and direction over its operations and employment practices.

42.     At all times hereinafter mentioned, SCI Funeral Services of New York, Inc. employed employees who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

43.     SCI Funeral Services of New York, Inc.'s annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***Defendant Alderwoods (New York), LLC***

44.     Upon information and belief, Alderwoods (New York), LLC was and still is a domestic limited liability corporation, authorized to do business pursuant to the laws of the State of New York.

45.     Vernon C. Wagner Funeral Homes is a d/b/a of Alderwoods (New York), LLC.

46.     At all times hereinafter mentioned, Alderwoods (New York), LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

47.     At all times hereinafter mentioned, the activities of Alderwoods (New York), LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

48.     Upon information and belief, Alderwoods (New York), LLC maintains control, oversight, and direction over its operations and employment practices.

49.     At all times hereinafter mentioned, Alderwoods (New York), LLC employed employees who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant Chas. Peter Nagel, LLC**

50.     Upon information and belief, Chas. Peter Nagel, LLC was and still is a domestic limited liability corporation, authorized to do business pursuant to the laws of the State of New York.

51.     At all times hereinafter mentioned, Chas. Peter Nagel, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

52.     At all times hereinafter mentioned, the activities of Chas. Peter Nagel, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

53.     Upon information and belief, Chas. Peter Nagel, LLC maintains control, oversight, and direction over its operations and employment practices.

54.     At all times hereinafter mentioned, Chas. Peter Nagel, LLC employed employees who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant I.J. Morris, LLC**

55.     Upon information and belief, I.J. Morris, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

8

56.     At all times hereinafter mentioned, I.J. Morris, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

57.     At all times hereinafter mentioned, the activities of I.J. Morris, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

58.     Upon information and belief, I.J. Morris, LLC maintains control, oversight, and direction over its operations and employment practices.

59.     At all times hereinafter mentioned, I.J. Morris, LLC employed employees who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Defendant New York Funeral Chapels, LLC***

60.     Upon information and belief, New York Funeral Chapels, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

61.     Claude R. Boyd–Spencer Funeral Home is a d/b/a of New York Funeral Chapels, LLC.

62.     At all times hereinafter mentioned, New York Funeral Chapels, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

63.     At all times hereinafter mentioned, the activities of New York Funeral Chapels, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

64.     Upon information and belief, New York Funeral Chapels, LLC maintains control, oversight, and direction over its operations and employment practices.

65.     At all times hereinafter mentioned, New York Funeral Chapels, LLC employed employees who regularly engaged in commerce or in the production of goods for commerce or in

handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Defendant Thomas M. Quinn & Sons, LLC***

66.     Upon information and belief, Thomas M. Quinn & Sons, LLC was and still is a domestic limited liability corporation, authorized to do business pursuant to the laws of the State of New York.

67.     At all times hereinafter mentioned, Thomas M. Quinn & Sons, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

68.     At all times hereinafter mentioned, the activities of Thomas M. Quinn & Sons, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

69.     Upon information and belief, Thomas M. Quinn & Sons, LLC maintains control, oversight, and direction over its operations and employment practices.

70.     At all times hereinafter mentioned, Thomas M. Quinn & Sons, LLC employed employees who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Defendants***

71.     Defendants are in the funeral services business.

72.     Defendants own and operate funeral homes that do business under manner different names.

73.     Defendants are within SCI Funeral Services, LLC's branding of Dignity Memorial Services.

74.     The Subsidiary Defendants are subsidiaries of SCI Funeral Services of New York, Inc.

75.     Defendants are subsidiaries of SCI Funeral Services, LLC.

76.     Defendants constitute a unified operation.

77.     Defendants constitute a common enterprise.

78.     Defendants have interrelated operations.

79.     Some of Defendants' locations are internally referred to as "Care Centers."   The Care Centers will receive and embalm deceased individuals that will either be delivered to other locations or picked up by employees of Defendants' other locations.

80.     For instance, when Plaintiff worked at the Claude R. Boyd–Spencer Funeral Home in Babylon, he embalmed deceased persons who were later transported to D'Andrea Bros. Funeral Home in Copiague, Claude R. Boyd - Caratozzolo Funeral Home in Deer Park, and other Long Island funeral homes owned and operated by Defendants.

81.     Embalmers and other employees were subjected to the same workplace policies and procedures.

82.     Plaintiff's procedures for embalming and providing Defendants' services to their customers were branded as either SCI or Dignity Memorial.

83.     Defendants have common management.

84.     Embalmers' supervisors report to a regional Market Director.

85.     For instance, Plaintiff's supervisor reported to the Long Island Market Director.

86.     The regional Market Directors to an individual who is responsible for either the Northeast Region of the United States or New York State.

87.     Defendants have a centralized control of labor relations.

88.     Defendants share employees.

89.     Defendants commingled funds with each other.

90.     For example, the Long Island Market Director is responsible for allocating the budgets of Defendants' facilities in Nassau and Suffolk County.

91.     Defendants constitute a single employer.

92.     Defendants constitute an integrated enterprise.

93.     Defendants share common websites, including https://www.sci-corp.com and https://www.dignitymemorial.com.

94.     Defendants use a centralized hiring portal to solicit applications and notify the public of job openings on their website.

95.     Defendants maintain control, oversight, and direction over their Embalmers and other employees, including timekeeping, payroll and other employment practices that applied to them.

96.     At all times hereinafter mentioned, Defendants individually and collectively were and still are "employers" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(5).

97.     At all times hereinafter mentioned, the activities of Defendants constituted an "enterprise" within the meaning of 29 U.S.C. § 203(r) & (s).

98.     At all times hereinafter mentioned, Defendants employed employees who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

99.     Defendants' collective annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## THE FLSA COLLECTIVE ACTION

100.     Plaintiff seeks to proceed as a collective action with regards to the First Cause of Action, pursuant to 29 U.S.C. § 216(b) on behalf of himself and the FLSA Collective.

101.     At any given time, Defendants employ over 100 individuals who were employed as "Manual Workers," including as Embalmers.

102.     As a result, upon information and belief, there are approximately more than 200 current and former similarly situated employees in the FLSA Collective.

103.     Plaintiff represents other employees and are acting on behalf of Defendants' current and former employees' interests as well as their own interests in bringing this action.

104.     The FLSA Collective is readily identifiable and locatable through Defendants' records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been unlawfully deprived of minimum wages in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## CLASS ACTION ALLEGATIONS

105.     Plaintiff brings the Second Cause of Action as a class action, pursuant Rule 23(a) and (b), on behalf of the Class.

106.     The persons in the Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.

107.     Upon information and belief, the size of the Class exceeds 300.

108.    This case is properly maintainable as a class action under Rule 23(b)(3).  There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of Class, including but not limited to:

      a.  whether Defendants failed to pay timely wages to Plaintiff and the Class in violation of and within the meaning of the N.Y. Lab. Law § 191(1)(a);

      b.  whether Defendants acted in good faith when failing to pay Plaintiff and the Class timely; and

      c.  the nature and extent of class-wide injury and the measure of damages for those injuries.

109.    Plaintiff will fairly and adequately protect the interests of the Class.

110.    Plaintiff has no interests antagonistic to the class.

111.    Plaintiff is represented by attorneys who are experienced and competent in both class litigation and employment litigation.

112.    Plaintiff and the Class have been equally affected by Defendants' failure to pay proper wages.  Moreover, members of the Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

113.    Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

114.    Plaintiff's claims are typical of those of the Class.  Plaintiff and the Class were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay timely wages.

115.    Plaintiff's job duties and manner of payment are typical of those of the Class.

116.    That is, Plaintiff and the Class were manual workers.  They spent over 25% of their working time on physical labor such as: pushing, lifting, and otherwise moving deceased

individuals; lifting and handling tools, utensils, and supplies; climbing stairs; and cleaning and organizing.

117.   Plaintiff and the Class were paid every other week.

118.   Defendant applied their biweekly payment policy to the Class uniformly.

119.   Plaintiff is informed, believe, and thereon allege that Defendants' unlawful conduct has been widespread, repeated, and consistent as to the Class Members and throughout Defendants' operations in New York.

120.   Plaintiff and the Class were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed.

121.   Plaintiff and the Class were uniformly deprived of the ability to use – i.e., spend, invest, or save – their earned wages during periods in which payment was illegally delayed.

122.   and the Class lost the opportunity to grow such untimely-paid wages through investment or otherwise benefit financially, including by paying down debts earlier.

123.   Defendants, however, benefited from the delayed payments.  That is, among other things, Defendants reduced its administrative costs by paying less frequently than required and use the extra money they were holding onto as they pleased until payroll was cut.

124.   Plaintiff and the Class were denied wages amount to at least the minimum wage times their hours worked for the duration of the illegal delay.

125.   Plaintiff and the Class were denied their federally mandated overtime wages for the duration of the illegal delay.

126.   Defendants were able to pay all minimum wages and overtime wages due on a weekly basis.

127.    Defendants were able to and did pay Plaintiff and the Class all minimum wages and overtime wages due within the statutorily required period as it relates to the second workweek of each pay period, but refused to do so for the first workweek.

128.    Defendants did not possess a good faith basis for deciding to pay and thereafter continuing to pay their employees' wages biweekly.

129.    The State of New York has required certain businesses to pay their manual workers on a weekly basis since the 19th Century.  *See* N.Y. Session Law 1890, Ch. 388 § 1 ("Every manufacturing . . . company shall pay weekly, each and every employee engaged in its business, the wages earned by such employee to within six days of the date of such payment . . . ."); N.Y. Session Law 1897, Ch. 415 §§ 2, 10 ("Every corporation . .  shall pay weekly to each employe [sic] the wages earned by him to a day not more than six days prior to the date of such payment.").

130.    A reasonable employer inquiring into the wage payment rules of New York would know that manual workers are to be paid each week given that, for example, the rules are listed on the Department of Labor's Frequency Asked Quests flyer regarding the Wage Theft Prevention Act    (https://dol.ny.gov/system/files/documents/2021/03/wage-theft-prevention-act-frequently-asked-questions_0.pdf) and many legal, human resource, and employment blogs brought attention to this issue following the First Department's 2019 decision in *Vega v. CM & Assocs. Constr. Mgmt. LLC*, 175 A.D.3d 1144 (1st Dept. 2019).

131.    Upon information and belief, Defendants did not apply for the exemption.

132.    The New York State Department of Labor has not authorized Defendants to pay its employees on a biweekly basis.

133.    Upon information and belief, Defendants did not: (a) inquire into whether its biweekly payroll practice complies with the NYLL; (b) take requisite steps to ensure that Plaintiff and Class

Members were paid as per the timely pay requirements of the NYLL; and (c) conduct any study or audit of its compensation practices to ensure that Plaintiff and the Class Members were paid in compliance with the NYLL's timely payment requirements.

134.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The Class has been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

**FIRST CAUSE OF ACTION**
**FLSA – Failure to Pay Timely Wages**
**(On behalf of Plaintiff and the FLSA Collective)**

135.    Plaintiff incorporates by reference all preceding allegations.

136.    Plaintiff and members of the FLSA Collective are current and former employees entitled to on-time payment of their statutorily required wages after the workweek ends.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

137.    Defendants, however, withheld Plaintiff's and the FLSA Collective's federally mandated wages for about 11 days after the conclusion of the workweek.

138.    This delay was pursuant to a companywide policy and practice to pay Defendants' employees on a biweekly basis.

139.    Such a delay is inherently unreasonable, as Defendants were required by New York law to pay Plaintiff and the FLSA Collective within seven days after the end of the workweek.

140.    Defendants failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiff and the FLSA Collective.

141.    Defendants had the means to pay Plaintiff and the FLSA Collective within one week of the end of the workweek but chose not to.

142.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

143.    As a consequence of the willful delay of wages, alleged above, Plaintiff and the FLSA Collective incurred damages and seek to recover interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### NYLL – Untimely Payment of Wages
### (On behalf of Plaintiff and the Class)

144.    Plaintiff incorporates by reference all preceding allegations.

145.    Defendants failed to pay Plaintiff and the Class within seven days after the end of each workweek as required by NYLL § 191(1)(a).

146.    Defendants have not employed over 1,000 individuals in the State of New York for one or more consecutives years.

147.    Defendants have not received authorization under NYLL § 191(1)(a)(ii) from the Commissioner of Labor to pay its employees less frequently than once per week.

148.    Defendants do not possess a good faith basis for believing that its delayed payment of wages complied with the law.

149.   Due to Defendants' violations of NYLL § 191(1)(a), Plaintiff and the Class are owed liquidated damages amounting to the value of any late-paid wages during the six years prior to the filing of this complaint, interest, and reasonable attorneys' fees and costs pursuant to NYLL § 198.

### THIRD CAUSE OF ACTION
### FLSA – Failure to Pay Overtime Wages
### (On behalf of Plaintiff)

150.   Plaintiff incorporates by reference all preceding allegations.

151.   Plaintiff failed to pay Plaintiff at one and one-half times his regular rate for all hours worked over 40 per week.

152.   Defendants failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiff for all hours worked over 40.

153.   Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

154.   Because of Defendants' failure to pay overtime wages, Plaintiff incurred damages and seeks to recover back wages, interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### NYLL – Failure to Pay Overtime Wages
### (On behalf of Plaintiff)

155.   Plaintiff incorporates by reference all preceding allegations.

156.   Plaintiff failed to pay Plaintiff at one and one-half times his regular rate for all hours worked over 40 per week.

157.   Defendants failed to make a good faith effort to comply with the NYLL with respect to compensating Plaintiff for all hours worked over 40.

158.    Defendants do not possess a good faith basis for believing that its delayed payment of wages complied with the law.

159.    Because of Defendants' failure to pay overtime wages, Plaintiff incurred damages and seeks to recover back wages, interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A.  Leave to give notice to the FLSA Collective that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.  Certification of this case as a Class Action under Rule 23;

C.  Appointment of Plaintiff as the Class Representative;

D.  Appointment of Kessler Matura P.C. as Class Counsel;

E.  Unpaid overtime wages;

F.  Liquidated damages;

G.  Attorney's fees and costs of the action;

H.  Pre-judgment interest and post-judgment interest as provided by law;

I.  A declaratory judgment that the practices complained of are unlawful; and

J.  Such other injunctive and equitable relief as this Court shall deem just and proper.

Dated: Melville, New York
            January 6, 2023

                                            Respectfully submitted,


                                            By: /s/ *Troy l. Kessler*
                                                    Troy L. Kessler

Troy L. Kessler
Garrett Kaske
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Phone: (631) 499-9100
Fax: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiff and the
Putative FLSA Collective and Class*

21

# <u>Exhibit A</u>

DocuSign Envelope ID: 35EEE973-D56B-467A-8D87-1E9B2D7F1F61

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my former employer, SCI Funeral Services of New York, Inc. et al. and/or any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

1. During the past three years, there were occasions when SCI Funeral Services of New York, Inc. et al.did not pay me as required by the Fair Labor Standards Act.

2. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement. I agree to be bound by any adjudication, whether it is favorable or unfavorable.

3. I also consent to join any separate or subsequent action to assert my claims against SCI Funeral Services of New York, Inc. et al. and/or any related entities potentially liable.

Date: _____12/6/2022_____

DocuSigned by:

*Robert Rogala*

84E077DC300542D...

_____
Signature

Robert Rogala

_____
Print Name